**In the Matter of TRI SPORTSWEAR, Inc., Debtor.**

No. 52697.

United States District Court
E. D. New York.

March 8, 1957.

Amen, Gans, Weisman & Butler, New York City, for debtor. Lester G. Renard, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of New York, for Industrial Commissioner of State of New York, claimant-respondent. Samuel Stern, Asst. Atty. Gen., of counsel.

BRUCHHAUSEN, District Judge.

The debtor has petitioned this Court for a review of the Referee's order, dated November 7, 1956, allowing a claim of the Industrial Commissioner of the State of New York against the debtor amounting to $2,921.01 for unemployment insurance taxes.

The Commissioner claimed that the debtor, under the provisions of the statute, Section 560, subd. 7 of the Labor Law, McK.Consol.Laws, c. 31, was liable for the taxes incurred by Townbrook Clothes Corp., which was under contract with the debtor.

The debtor excepts to some of the Referee's findings and also claims that the debtor is not liable, within the meaning of the statute.

It is conceded that the debtor obtained a Government contract for the production of Eisenhower jackets and entered into a subcontract with Townbrook for the doing of certain work and furnishing of materials in connection therewith and that the taxes were incurred.

Under certain circumstances the statute casts responsibility for the taxes upon the primary employer. As far as applicable and relevant, it reads as follows:

"Whenever one employer contracts with a second employer for any work which is part of the first employer's usual trade, * * * the first employer shall be liable for any contributions otherwise payable by the second employer, based upon wages paid in respect to such work, unless the second employer is free to do business with anyone who may wish to contract with him."

The principal contention of the debtor is that the debtor, who comes within the description of the "first employer" in the statute is exempted from liability by the exception contained therein because Townbrook, the "second employer", was "free to do business" with contractors, other than the debtor, emphasizing that there is nothing in the contract which restrains or prohibits Townbrook from entering into agreements with other contractors.

The Commissioner, on the other hand, urges that the facts establish that Townbrook's establishment was wholly devoted to the performance of its work for the debtor and was not in a position to manufacture for any other contractor and hence was not "free to do business" with such contractor within the meaning of the statute.

The Referee's findings of fact are fully supported by the evidence. It appears that for more than a year prior to May 1, 1955, the date of the execution of the contract between the debtor and Townbrook, the latter concern was inactive; that pursuant to the contract Townbrook furnished to the debtor weekly statements of expenditures and requests for reimbursement; that the statements included the items of labor, taxes, union contributions, mortgage payments, fuel and other operational expenses; that the unemployment tax for the quarterly period, preceding the quarter which is the subject of the instant claim was paid by Townbrook and that the debtor reimbursed Townbrook therefor; that during the period of the claim Townbrook performed work exclusively for the debtor and did not have the facilities and was physically unable to perform work for anyone other than the debtor and, at the debtor's instance acquired additional space for such performance and that the said contract obligated Townbrook to deliver its stock, indorsed in blank, and the resignations of its officers to an escrow agent, empowered to turn them over to the debtor in the event of a breach of the contract.

Under these circumstances, it is clear that Townbrook was not in a position to deal with any other contractor; that its commitment with the debtor prevented it from doing so; that it could not in good faith enter into other contracts which it could not perform and therefore was not free to do business with other contractors.

The word "free" in business and daily activities of people is commonly used and understood to mean that one is free of commitments. For example, when one is called upon to participate in an activity and finds himself committed or so engaged as to prevent attendance, the usual reply is that he is not free to engage in such activity.

The findings and order of the Referee are confirmed.